IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EARL MAYFIELD,

        Plaintiff,

vs.                                             No. CIV 07-149 JH/LFG

PETER HACKETT, Officer,
Albuquerque Police Department,
DUFF RYAN, Officer, Albuquerque
Police Department,

        Defendants.

## FINDINGS AND RECOMMENDATIONS REGARDING
## PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT[1]

THIS MATTER is before the Court *sua sponte* under 28 U.S.C. § 1915(e)(2) and Fed. R.

Civ. P. 12(b)(6), to review Plaintiff's civil rights complaint.  Plaintiff Earl Mayfield ("Mayfield") is

incarcerated and is proceeding *in forma pauperis*.  The Court recommends that certain of Mayfield's

claims must be dismissed without prejudice.

### Factual and Procedural History

At the time he filed his initial complaint on February 2, 2007, Mayfield was proceeding *pro*

*se*; however, on August 17, 2007, attorney Dennis W. Montoya entered his appearance on behalf of

Mayfield [Doc. 34].  Prior to the entry of counsel, the Court filed an Order [Doc. 29] directing

---

[1] Within ten (10) days after a party is served with a copy of this legal analysis and recommenda-
tions, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and
recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the ten-
day period allowed if that party wants to have appellate review of the analysis and recommendations.  If no
objections are filed, no appellate review will be allowed.

submission of a Report pursuant to <u>Martinez v. Aaron</u>, 570 F.2d 317, 320 (10th Cir. 1978), as an aid to the Court in developing the factual and legal basis for determining whether Plaintiff has a meritorious claim.  The parties were advised that the <u>Martinez</u> Report could be used as a basis for awarding summary judgment.

Defendants Peter Hackett ("Hackett") and Duff Ryan ("Ryan") filed their <u>Martinez</u> Report [Doc. 37] on October 2, 2007, and Mayfield, through counsel, filed a Response to the Martinez Report [Doc. 38].  The Court has considered Plaintiff's Complaint, Defendants' Answer, the Martinez Report and the Response thereto and, as noted above, concludes that some of Mayfield's claims must be dismissed.  This review was done pursuant to 28 U.S.C. § 1915(e)(2), which provides that Court has discretion to dismiss an *in forma pauperis* complaint *sua sponte* "at any time if the action . . . is frivolous or malicious; [or] fails to state a claim upon which relief may be granted."  The Court may also dismiss a complaint *sua sponte* under Fed. R. Civ. P. 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1109 (10th Cir. 1991).

While Mayfield is now proceeding with counsel, his complaint was submitted *pro se* and presumably was drafted by Mayfield, not by his present counsel.  No amended complaint was filed after counsel entered his appearance.  In reviewing the complaint, therefore, the Court will apply the same legal standards applicable to pleadings drafted by counsel but will liberally construe the allegations, as warranted.  <u>Northington v. Jackson</u>, 973 F.2d 1518, 1520-21 (10th Cir. 1992).

The complaint sets forth six separate incidents between December 2005 and September 2006 involving contact between Mayfield and the defendant police officers in the course of which, he

alleges, Defendants violated his constitutional rights numerous times and in various ways.  Several of Mayfield's claims involve alleged illegal searches and seizures or illegally issued warrants which, he claims, render certain evidence – including drugs discovered on his person – "inadmissible and tainted as defined by the Fruit of the Poisonous Tree Doctrine."  [Complaint, Doc. 1, at 6].  Other claims by Mayfield involve allegations of excessive force and planting evidence.

Mayfield was arrested several times and charged in state court with a variety of crimes in connection with these incidents.  As far as the Court can determine at this time, none of the criminal cases against Mayfield has yet been resolved, primarily due to pending competency determinations, as set forth in the Martinez report.  This circumstance raises issues under Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994) which affect several of Mayfield's claims of constitutional violation, as discussed below.

### Discussion

For his claimed constitutional violations, Mayfield is seeking damages pursuant to 42 U.S.C. § 1983.  The Supreme Court in Heck v. Humphrey, *supra*, held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

Id., 512 U.S. at 486-87.  The test to be applied in determining whether a claim is cognizable under Section 1983 is whether "a judgment in favor of the plaintiff would necessarily imply the invalidity

of his conviction or sentence."   If so, "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  Id..

The Court went on to note that a suit for damages attributable to an allegedly unreasonable search may nevertheless be cognizable, even if the search resulted in tainted evidence, '[b]ecause of doctrines like independent source and inevitable discovery . . . and especially harmless error." Id., 512 U.S. at 487 n.7.  On the other hand, when the record indicates that the entire criminal case is based on evidence obtained as a result of an invalid search or an illegal arrest, then an award of damages to plaintiff in the federal civil action on grounds the search or arrest violated the plaintiff's civil rights *would* necessarily imply the invalidity of any conviction or sentence based on the tainted evidence, and the § 1983 action would be barred by Heck.  *See*, Trusdale v. Bell, 85 Fed. Appx 691, 693 (10th Cir. 2003).  Such claims have been described as "rare situations."  Id.; Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 559 n.4 (10th Cir. 1999).

In addition, "Heck precludes § 1983 claims relating to pending charges when a judgment in favor of the plaintiff would necessarily imply the invalidity of any conviction or sentence that might result from prosecution of the pending charges."  Beck v. City of Muskogee Police Dep't, *supra*, at 557.  Any such § 1983 action would be premature.  When the Plaintiff alleges a number of separate claims in his complaint, each claim "must be assessed individually to determine whether it has yet matured."  Id..  The Court will therefore proceed to analyze individually each of Mayfield's several claims against these Defendants.  Mayfield was not specific in his complaint as to the exact constitutional violations allegedly occurring in connection with each of the incidents.  The Court will therefore analyze the complaint by making the assumptions it deems appropriate as to basis for each claim.

4

<u>Incident of December 16, 2005</u>

A.  <u>Mayfield's Version of the Incident</u>

Mayfield alleges as follows:

Defendant police officers pulled him over for displaying an illegible temporary vehicle tag. They then proceeded to remove the tag and tear it up.  Mayfield believes that Defendants are now unable to produce the tag.  The officers did not issue a traffic citation to Mayfield for the illegible tag. However, the officers "ran" Mayfield's name for warrants and discovered an outstanding warrant for failure to appear.  Mayfield was thereupon arrested and transported to the county detention center. The outstanding warrant was issued on November 22, 2005 by state District Court Judge Michael Kavanaugh in Cause No. CR 05-1584.  However, the warrant was invalid and was later quashed by Judge Kavanaugh, because neither Mayfield nor his attorney received notice of the hearing in question, as the notice was mailed to the wrong address.

At the jail's intake center Mayfield was searched by the two defendant officers, along with the center's Special Tactics Group commander and several other officers.  One of the officers kept a Taser gun aimed at Mayfield throughout the search and threatened to use it on him "every three to five seconds."   Mayfield charges that this search was "unwarranted" and violated the detention center's standard booking procedure.  The search resulted in recovery of "a small amount of cocaine" which resulted in Mayfield's being charged with possession of a controlled substance, introduction of contraband into a county jail, and tampering with evidence.

B.  <u>Defendants' Version of the Incident</u>

Defendants dispute that the arrest was illegal.  They contend as follows:

Defendants were on patrol when they spotted Mayfield driving a car which was illegally

displaying its license plate.  They state that the plate was taped to the inside rear window and could not be read by the officers when directly behind Mayfield's car.  They initiated a traffic stop and, while approaching Mayfield's car, saw him "making furtive movements toward the middle of the seat, as if trying to retrieve or hide something." [Doc. 37, at 2].  Defendant Ryan ran a routine check of Mayfield through the National Crime Information Center and found that he was wanted on an outstanding warrant for trafficking a controlled substance, possession of a controlled substance, and possession of drug paraphernalia.  Mayfield was thereupon arrested, handcuffed, and taken to the Metropolitan Detention Center ("MDC").

During transport to MDC, Mayfield repeatedly asked the officers to place move his handcuffs to the front of his body.  The officers refused to do so, for reasons of officer safety, and because they suspected that Mayfield had contraband on his person and moving the handcuffs would give him access to the possible contraband.  At MDC, Mayfield was taken to the "dress out room," where he undressed.  Defendant Hackett then observed a small plastic bag taped to Mayfield's penis.  The contents of the bag resembled crack cocaine.  The bag was confiscated, and field test results were positive for cocaine.

C. *Heck* Analysis

It appears that Mayfield claims his constitutional rights were violated by the officers' actions in making a traffic stop with no probable cause, destroying exculpatory evidence (*i.e.*, tearing up the vehicle tag), and arresting him on an invalid warrant.  He argues that the drug evidence uncovered as a result of this invalid arrest was therefore tainted and could not be admitted in the criminal prosecution.

The crimes charged in the indictment resulting from this incident are Possession of a

Controlled Substance (cocaine), in violation of NMSA (1978) § 30-31-23; Bringing Contraband into a Jail, in violation of NMSA (1978) § 30-22-14 (B)&(C); and Tampering with Evidence, in violation of NMSA (1978) § 30-22-5.   [*See,* Grand Jury Indictment in CR 06-2033, Doc. 37, Ex. A].

In order to convict Mayfield on the charge of Possession of a Controlled Substance, the government must show that he intentionally possessed a controlled substance.  Conviction on the charge of Tampering with Evidence requires a showing that Mayfield destroyed, changed, hid, placed or fabricated physical evidence with intent to prevent apprehension, prosecution or conviction.  While the continued validity of the charge of Bringing Contraband into a Jail is questionable under the facts as stated,[2] this Court makes no comment on the state prosecution but notes only that, as far as this Court is aware, that charge is still pending.  To convict Mayfield under § 30-22-14, the state would have to prove that Mayfield committed the act of intentionally "carrying contraband [including a controlled substance] into the confines of a county or municipal jail."

"Heck focuses on what a judgment in a plaintiff's favor would necessarily show."  Beck v. City of Muskogee, *supra*, at 560.  If indeed the initial arrest on December 16, 2005 were found to be improper, there could be no prosecution for possession of contraband, tampering with evidence, or bringing contraband into a jail.  This is so because all of the evidence underlying these charges – that is, the drugs and the fact that they were found concealed in Mayfield's genital area – would  be inadmissible if the traffic stop were found to be illegal from its inception, and if Mayfield had indeed been arrested on an invalid warrant.

----

[2]The offense of Bringing Contraband into a Jail under NMSA (1978) 30-22-14(B) has recently been addressed by the New Mexico Court of Appeals; *see*, State v. Cole, 142 N.M. 325, 164 P.3d 1024 (Ct. App. 2007) (to be found guilty of bringing contraband into a jail, a person must enter the jail voluntarily, not under arrest).

Thus, before Mayfield could bring a § 1983 action claiming constitutional violations arising from this incident, he would have to demonstrate that any criminal prosecution resulting from the December 16, 2005 arrest was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  Trusdale v. Bell, *supra*.  *See also*,  McNally v. Colorado State Patrol, 13 Fed. Appx. 806, 807-08 (10th Cir. 2001) (a claim for malicious prosecution cannot be brought under § 1983 until plaintiff proves that the underlying convictions were overturned by a competent state authority).

The Martinez Report indicates that State v. Mayfield, CR 06-2033, has been stayed pending determination of Mayfield's competence.  [Doc. 37, at 1].  Mayfield filed a Response to the Martinez Report [Doc. 38], but he does not dispute that the criminal action remains pending.  No party has notified the Court that the competency proceedings are complete, nor has Mayfield shown that CR 06-2033 was resolved in his favor.

The Court finds that Mayfield's claims in connection with the December 16, 2006 incident must be dismissed without prejudice for his failure to establish the necessary prerequisites as set forth in Heck v. Humphrey, *supra*.

Incident of April 4, 2006

A.  Mayfield's Version of the Incident

Mayfield alleges as follows:

Defendants had his home on a "stake-out."  (He doesn't state why the police were watching him and implies it was done simply as a means of harassment).  He has no history of violence, and any outstanding warrants against him at this point were for non-violent crimes.  At a time when he was

taking medication prescribed by his doctor for a shoulder injury, he left his house in a car to do some errands.  Shortly after leaving his house, Mayfield got into a one-car accident, running over a cable box and sustaining a flat tire.   Presumably, he alleges that the medication affected his ability to drive.

Mayfield waited with the car for about ten minutes, then he left and began to go home on foot.  As he was crossing a neighbor's yard, Defendants and at least eight other police officers appeared at Mayfield, confronting him with their pistols drawn.  Although he complied with all of the officers' orders, and although there were ten officers present, Mayfield was shot twice with a Taser gun by Defendant Hackett and was then placed in restraints.

As a result of the incident, Mayfield says he was charged with a probation violation and aggravated eluding a police officer.  An indictment in State v. Mayfield, cause CR 06-2895, was filed on July 13, 2006.  The indictment charges Mayfield  with aggravated fleeing a law enforcement officer, allegedly occurring on April 4, 2006.  [Doc. 37, Ex. B].  The indictment also charges him with resisting, evading or obstructing an officer, allegedly occurring on March 26, 2006, a charge which Mayfield says is an "unexplained" and "unrelated" to the incident of April 4.  [Doc. 1, at 7].

On May 3, 2006, Judge Blackmer of the state district court released Mayfield on probation to the Community Corrections Program.

B.  Defendants' Version of the Incident

Defendants contend as follows:

Defendants acknowledge they were each conducting surveillance on a residence in an effort to locate Mayfield, who was wanted on at least five outstanding felony warrants and two misdemeanor warrants.  Each of the Defendant officers was in a separate police car.  When the officers saw Mayfield drive past them, Defendant Ryan pulled behind Mayfield, intending to conduct

a traffic stop.  Mayfield did not stop when Ryan engaged his emergency equipment; instead, he ran through a stop sign and narrowly missed hitting a school bus.  The bus had to apply its brakes vigorously and sound its horn to avoid a collision with Mayfield.

Ryan continued to follow, as Mayfield continued to drive away.  At one point Mayfield cut in front of oncoming traffic, at which point Ryan disengaged his emergency equipment because he felt the situation had become dangerous.  Mayfield eventually eluded the officers who, as they followed in his wake, came upon marks in the street where Mayfield apparently lost control of his car, struck a curb, ran over a Comcast cable box, then over-corrected and drove through a yard. Defendants found the car abandoned, and they presumed that Mayfield had run away through backyards in the residential area.

Defendants then radioed their position and set up a perimeter in the area.  They said they drew their weapons because of Mayfield's history of violence, and because of the nature of the felony and misdemeanor offenses stated in the warrants.   After the perimeter was established, Ryan saw movement behind a fence in a backyard.  Ryan called out to Mayfield ordering him to lie down on the ground where he was.  Mayfield did not comply and began walking toward the officers.  He further refused to comply with their repeated commands.  Defendant Hackett then told Mayfield to lie on the ground and warned him that if he continued to advance on the officers, they would use the Taser on him.

Mayfield continued to defy the officers.  He continued walking toward them and then dropped to his knees, which placed a low chain link fence between the officers and himself.  This maneuver impaired Hackett's ability to use the Taser.  Mayfield remained on his knees, refusing the officers' further commands to lie down.  When the backup officers arrived, Hackett observed Mayfield making

gestures which indicated he was trying to decide which way to assault or run.  Hackett then moved up to the fence and placed the nose of the Taser through the chain link.  At this point he was approximately three feet away from Mayfield, and he told Mayfield that this was his last chance and that if he did not lie down he would be Tasered.  Mayfield continued to advance on his knees toward the two officers who were approaching.  At that point, Hackett deployed the Taser on Mayfield.

Defendants' stated reasons for using the Taser at that point were because Mayfield refused the officers' lawful orders, endangered lives while fleeing from police in his car, was larger than either of the officers who were approaching him, and had a history of violent confrontations with police officers.  Mayfield was treated paramedically at the scene and no injury was found.  He was then handcuffed, transported to MDC and booked.

### C.  *Heck* Analysis

Mayfield's claim of constitutional violations in connection with this incident is premised on his characterization of his own actions as entirely innocent and proper.  He contends that  the two Defendants, for no valid reason, conducted surveillance on him, followed him as he was lawfully driving on city streets and called other officers to the scene, and they all descended upon him *en masse* with guns drawn after his minor auto accident.  Defendants then Tasered him without justification, Mayfield further contends, even though he was cooperating fully with police commands.  As noted above,  Defendants have a much different version of the events of April 4, 2006.

In connection with this incident, Mayfield was charged with Aggravated Fleeing a Law Enforcement Officer, in violation of NMSA (1978) § 30-22-1.1.  That statute requires the state to prove that Mayfield "willfully and carelessly [drove] his vehicle in a manner that endanger[ed] the life of another person after being given a visual or audible signal to stop, whether by hand, voice,

emergency light, flashing light, siren or other signal, by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle in pursuit in accordance with the provisions of the Law Enforcement Safe Pursuit Act."

If Mayfield were to prevail on his claim that Defendants conducted surveillance on him without justification, and employed excessive force in Tasering him, such a victory would not necessarily imply the invalidity of any conviction on the charge of endangering others by driving carelessly after being told to stop. However, if Mayfield were to prevail on his claim that he was not trying to elude Defendant Ryan but was merely driving down the street normally and lawfully in the course of doing some errands, and on his claim that he was not driving so as to endanger the lives of the others, such a victory *would* "necessarily imply the invalidity" of any criminal conviction on the charge of Aggravated Fleeing a Law Enforcement Officer.

Therefore, Mayfield's claims. that Defendants followed him in his vehicle without justification and solely for purposes of police harassment, must be dismissed without prejudice. The Court will consider only the allegations of unjustified surveillance and excessive force in connection with the incident of April 4, 2006.

## Incident of April 7, 2006

A. Mayfield's Version of the Incident

Mayfield was still in jail on charges related to the incident of April 4, 2006, when Defendants went to his home with the Nuisance Abatement Team on April 7 to inspect the premises for evidence of a methamphetamine lab. The allegation that he maintained a drug lab in his home is completely unfounded and was made by Defendants for the sole purpose of harassing Mayfield. Mayfield's mother allowed the team of officers to inspect the home. No evidence of illegal activity was found.

B. <u>Defendants' Version of the Incident</u>

The Nuisance Abatement Team ("NAT") received a complaint from neighbors about foul odors coming from the house in question, and they therefore had probable cause to conduct an inspection of the premises. Defendant police officers were present while the NAT was conducting its search, a common occurrence when there is suspicion of narcotics-related activity. At the time they submitted the Martinez Report, Defendant stated they did not know whether an administrative warrant was sought prior to this inspection. They were awaiting more information on this issue.

No criminal charges were filed as a result of this inspection; however, Defendants believe that citations were issued for improper storage of propane tanks. Defendants state they will supplement the Martinez Report as soon as information becomes available as to any such citations. The Martinez Report has not been supplemented.

C. <u>*Heck* Analysis</u>

Mayfield appears to assert constitutional violations consisting of Defendants' participation in an unjustified and illegal search of his home, done for the sole purpose of harassing him. No evidence of drug activity was found, and no criminal charges were brought. Therefore, there is no <u>Heck v. Humphrey</u> issue as to this incident, and the claims arising from the events of April 7, 2006 will be retained.

<u>Incident of April 16, 2006</u>

A. <u>Mayfield's Version of the Incident</u>

While Mayfield was still in jail on charges arising from the April 4 incident, a 1989 Volvo used by Mayfield and his family mysteriously backed out of the driveway and into the street. Defendant police officers found the car in the street and had it towed. Mayfield's mother later picked it up.

13

B.  Defendants' Version of the Incident

Defendants were not involved in any towing incident such as that described by Mayfield. They have been unable to locate any documentation of such an incident on April 16, 2006.  However, Defendants did locate an incident report submitted by an Officer Montano, involving a towed vehicle which had been obstructing traffic near Mayfield's home on April 9, 2006.  Officer Montano reported that he was called to the scene to investigate a vehicle in the street that was obstructing traffic.  He found a Volvo parked in front of Mayfield's home.  All four doors were locked, the vehicle identification number was covered by a dashboard mat, and no license plate was affixed to the car. Officer Montano therefore could not determine the name of the registered owner.  His attempts to contact the owner of the residence were unsuccessful, and the vehicle was later towed.  A citation was issued for obstructing traffic, but no owner's name was listed on the citation.

C.  _Heck_ Analysis

Defendants dispute Mayfield's allegations that they were involved in any way in the Volvo incident, whether it occurred on April 9 or April 16, 2006.  There is no Heck v. Humphrey issue as to this incident, as there have not been any criminal proceedings undertaken against Mayfield in connection with this incident.  These claims will remain in the lawsuit.

Incident of July 6-7, 2006

A.  Mayfield's Version of the Incident

On or about May 3, 2006, Mayfield posted bond and was released from jail to the Community Custody Program ("CCP").  Mayfield says that from approximately May 17 to June 30, 2006, he "was absconded" from the CCP program, apparently meaning that he was considered to be an absconder during that period.

Mayfield says that his CCP supervisor, Carlos Yguado, claimed that Mayfield escaped from CCP surveillance by cutting off his ankle bracelet; however, Mayfield denies that he cut off the bracelet.  Based on Yguado's false information, state District Court Judge James Blackmer issued an escape warrant for Mayfield on or about May 17, 2006.  On or about June 30, 2006, Mayfield appeared before Judge Blackmer, who dismissed the escape warrant and reinstated Mayfield to CCP status, finding that Mayfield did not remove his ankle bracelet.

On or about July 6, 2006, the two Defendant officers asked Yguado to assist them in having the arrest warrant re-issued, based on false allegations that Mayfield violated his CCP conditions. Yguado refused to do so.   Both Defendants then approached Judge Ernest Romero, who took over Judge Blackmer's caseload upon Blackmer's retirement on July 3, 2006.  Defendants re-used the arrest warrant which Judge Blackmer issued on May 17, 2006, even though the warrant had already been canceled.  Defendants further failed to inform Judge Romero that Joel Luchetti, not Carlos Yguado, was actually Mayfield's probation officer.  Based on Defendants' perjured statements, Judge Romero re-issued the arrest warrant.  Using this illegally obtained warrant, Defendants re-arrested Mayfield on July 7, 2006.

Mayfield was charged with escape from the CCP program.  During the booking process, Mayfield was searched, and Corrections Officer Jason Ellis allegedly found a controlled substance on Mayfield.  Mayfield was also charged with assault on a peace officer (Jason Ellis), apparently for an incident that occurred during the booking and search process.  Mayfield was then charged, in cause CR 06-3152, with possession of a controlled substance and attempting to introduce contraband into a county jail.  On approximately August 10, 2006, Mayfield received a dissatisfactory discharge from probation and was granted bail in cause CR 06-3152.  That case is pending.

15

Mayfield states further that Defendant Hackett later falsely testified that he had no involvement in the July 6 warrant, or with cause CR 99-1030.

Mayfield claims that his arrest on July 7, 2006 was made pursuant to an illegally obtained arrest warrant, and that any drug evidence found as a result of the arrest is therefore tainted and inadmissible.

B. <u>Defendants' Version of the Incident</u>

On July 7, 2006, Defendant Ryan arrested Mayfield on two outstanding felony warrants from Cause No. 99-1030. Mayfield was found at his address of record and was arrested without incident, then transported and booked at MDC. Defendants state they have no other information about this arrest.

On July 8, 2006, Bernalillo County Sheriff's Officer J. Bartholf was dispatched to MDC on a report of narcotics found on an inmate. Upon his arrival, Bartholf spoke with Corrections Officer Jason Ellis, who stated that the previous evening, he walked past Mayfield's cell while performing a security check, and saw Mayfield attempting to hide an object behind his back near his buttocks area. C.O. Ellis ordered Mayfield to stop whatever he was doing, and Mayfield lunged at him, striking him in the stomach. Ellis restrained Mayfield and performed a search of his buttocks. He found two small plastic baggies in Mayfield's buttocks region. Ellis took possession of the baggies, booked Mayfield on charges of Battery on a Peace Officer and Bringing Contraband into Jail. He field-tested the substances found in the baggies. One of the substances tested positive for cocaine. A later Criminalistics Drug Analysis report was positive for cocaine and marijuana.

On or about July 24, 2006, Mayfield was indicted in CR 06-3152 on charges of Battery Upon a Peace Officer, and Bringing Contraband into a Jail. [Doc. 37, Ex. D]. The charges have been

16

stayed pending a determination of Mayfield's competence.

With respect to legality of the arrest warrant signed by Judge Romero, Defendants attach several documents to the Martinez Report, as follows [Doc. 37, Ex. E]:  An affidavit in cause CR 99-1030,  signed by Carlos Yguado, recites that on or about May 16, 2006, Mayfield violated the terms of his commitment to CCP in that he failed to report to his monitor as required and escaped from MDC.  A bench warrant signed by Judge Blackmer was filed May 17, 2006, stating that Mayfield was wanted on charges of failing to report to his CCP monitor and escaping from MDC.  An unexplained cancellation of the bench warrant was signed by Deputy Clerk of Court Monica Baca on July 3, 2006, with the notation "as per order of Judge Blackmer."  A new warrant in cause CR 99-1030 was signed by Judge Ernesto Romero and filed on July 6, 2006.  It stated that Mayfield was wanted for failure to comply with conditions of probation imposed by the Court on November 18, 1999, on charges of promoting prostitution.

Defendants assert, on information and belief, that Judge Blackmer was about to retire from the bench when he reduced Mayfield's bond on the May 17, 2006 arrest warrant to an amount that Mayfield could afford.  Defendants do not know why the warrant cancellation was issued on July 3, 2006.  Shortly thereafter, the case was transferred to Judge Romero.  Defendant Hackett spoke with Judge Romero and informed him of the charges pending against Mayfield, and also mentioned Mayfield's prior 42 felony arrests.  Judge Romero thereupon issued a bench warrant on July 6, 2006.

Defendants state in the Martinez Report that they learned that Mayfield had a hearing in state court on his motion to quash the warrant.[3]  Defendants believe the motion to quash was denied, and

---

[3] Defendants state that the hearing was held in October 2005, but the Court assumes this is typographical error and that the actual date was October 2006.

they say they requested a transcript of the hearing, and they will supplement the Martinez Report once the transcript is received.

C. *Heck* Analysis

To convict Mayfield under NMSA (1978) § 30-22-24, Battery Upon a Peace Officer, the government would have to prove that he committed the "unlawful, intentional touching  or application of force to the person of a peace officer while he [was] in the lawful discharge of his duties, when done in a rude, insolent or angry manner."  A finding in this case, that Mayfield's arrest was based on an illegal warrant issued on perjured testimony, would not implicate the elements of the offense of battery on Officer Ellis.

However, the same is not true of the charge of Bringing Contraband into a Jail.  Heck v. Humphrey precludes this Court from addressing Mayfield's claims that the drug evidence seized from his person by C.O. Ellis while Mayfield was in custody on July 7, 2006 was "tainted" by an illegal arrest.  So far as the Court is aware, that charge is still pending and, despite the questions raised by State v. Cole, *supra*, a finding in this case that the initial arrest was illegal would necessarily call into question the state prosecution for Bringing Contraband into a Jail.  Until Mayfield demonstrates that any conviction on this charge was reversed, expunged, declared invalid by a state court, or called into question by a federal court's issuance of a writ of habeas corpus, this Court cannot proceed on the claims of constitutional violation arising from the incidents of July 6-7, 2006.

Incident of September 26, 2006

A. Mayfield's Version of the Incident

On or about September 26, 2006, Mayfield drove to a hotel to pick up a family friend.  As he and the friend were driving away, Mayfield noticed that two police cars were following him.  He

pulled over to ask why he was being followed.  Defendant Ryan and another officer ordered him out of the car because his license was expired and he had no valid insurance.  No citations were ever issued on the expired license or insurance violations.  Mayfield states that the vehicle was, in fact, insured on that date.  The officers handcuffed Mayfield and placed him in a police car.  They then searched Mayfield's car and found nothing, and they had Mayfield's car towed away.

Defendant Ryan and the other officer then took Mayfield back to the hotel and escorted him to a hotel room, where they conducted a warrantless strip search.  They found nothing.  They then returned Mayfield to the police car, where he remained for two hours.  After this two-hour period, the officers searched Mayfield again, and again nothing was found.  Mayfield was detained in the police car for another 30 minutes, then he was transported to a police substation and placed in a holding cell.  Another 45 minutes elapsed, after which Defendant Ryan approached Mayfield with a clear plastic bag containing three rocks of crack cocaine.  Ryan told Mayfield he found the drugs in the back seat of his police car.

The police charged that Mayfield had drug paraphernalia in his car at the time of this arrest; however, he states that the items recovered were unused glassware, not paraphernalia.  Mayfield was charged with trafficking by possession of a controlled substance and tampering with evidence.

B.  Defendants' Version of the Incident

On September 26, 2006, several police officers were patrolling the parking lots of an Albuquerque hotel in reference to ongoing criminal activity including drug trafficking, stolen vehicles, burglaries and prostitution.  Detective Del Greco, who wrote the criminal complaint arising from Mayfield's arrest that day, stated that he was conducting surveillance at the hotel along with Defendant Ryan, when Mayfield drove his car into the hotel parking lot.  Del Greco recognized

Mayfield as a known distributor of crack cocaine.  He and Ryan knew that Mayfield's driver's license was suspended.

Mayfield honked his horn several times, and a white male approached the Mayfield vehicle. Del Greco observed what appeared to be a hand-to-hand exchange between Mayfield and the other man.  The other man then got into Mayfield's car and the two drove away.  The officers conducted an MVD check on Mayfield and confirmed that his license was in fact suspended.  The officers followed Mayfield and conducted a traffic stop.  Mayfield was advised that, because his driver's license was suspended and he had no proof of insurance and no valid registration, the car would have to be towed.

During an inventory search of the vehicle, Del Greco discovered two glass pipes of the sort commonly used to ingest narcotics, as well as four $20 bills on the passenger seat.  Both Mayfield and his passenger were placed under arrest and given their <u>Miranda</u> rights.  Ryan placed Mayfield in the back seat of his police car; prior to doing so, he searched the back seat of the police car for any contraband from prior arrestees.

Both Mayfield and the passenger agreed to speak to the detectives without their attorneys present.  The passenger told officers that he had contacted Mayfield earlier that day to purchase crack cocaine.  He stated that he had purchased crack cocaine from Mayfield on 12 earlier occasions, and that on this occasion the two agreed to meet at the hotel parking lot for the drug transaction.  During the transaction, Mayfield told the passenger to get into the car, as there were "cops" in the area.

At some point in the questioning, the passenger told Defendant Ryan that Mayfield might have crack cocaine concealed in his buttocks area.  Defendant Ryan made a search of the passenger's hotel room and found a beer can with a burn mark and residue that indicated crack cocaine had been

ingested in the room.  The passenger admitted to smoking crack cocaine.  Defendant Ryan then

returned to his police car and observed Mayfield making movements which appeared to indicate he

was disposing of contraband or attempting to remove it from his person.  Ryan asked Mayfield if he

had crack cocaine concealed in his buttocks area.  Mayfield said no, and he told the police to go

ahead and search him.  Defendant Ryan was aware that Mayfield smuggled contraband into jail on

two prior occasions.  Ryan then secured an unoccupied hotel room and, together with another officer,

conducted a "brief search" of Mayfield's buttocks area.  The search lasted approximately three

minutes and was recorded on a belt tape.  No narcotics were found.

Ryan arrested Mayfield for possession of drug paraphernalia.  Mayfield was then transported

to the police substation and placed in a holding cell.  After he removed Mayfield from his police car,

Ryan returned to the car and searched the back seat for contraband.  On the floor, he found a baggie

with four white rocks inside.  The baggie was not there before Mayfield was placed in the back of the

car.  The substance in the baggie tested positive for cocaine on a field test.

As a result of this incident, Mayfield was charged in an indictment (cause CR 06-4577), with

Trafficking by Possession with Intent to Distribute Cocaine, in violation of NMSA (1978) § 30-31-

20(A)(3); and Tampering with Evidence in violation of § 30-22-5, in that he hid cocaine in the

arresting officer's vehicle.  [Doc. 37, Ex. F].

C.  *Heck* Analysis

Mayfield does not dispute that his license was suspended on the date in question, and there

is no specific assertion in the complaint that Defendant Ryan violated his constitutional rights by

conducting the initial traffic stop.  However, Mayfield does appear to question the justification and

reasonableness of the several searches that occurred in connection with this incident.  He also appears

21

to allege that Defendant Ryan planted crack cocaine in his own police vehicle and then falsely claimed that Mayfield left it there.

As far as this Court is aware, Mayfield has not been convicted on the charges in CR 06-4577; rather, those charges have been stayed pending a determination of Mayfield's competence.   If Mayfield were to succeed on his claim that Ryan planted drug evidence, then any conviction on the Trafficking and the Tampering with Evidence charges would necessarily be called into question. However, the claim that his constitutional rights were violated on September 26, 2006 by unreasonable searches of his person is not precluded by <u>Heck v. Humphrey</u>, as no contraband was found and no criminal charges resulted from anything discovered on these searches.   Therefore, the latter claim may proceed.

<b><u>Recommended Disposition</u></b>

In accord with the above discussion, the Court recommends that the certain claims in Mayfield's complaint be dismissed without prejudice, pursuant to the principle of <u>Heck v. Humphrey</u>, *supra*.   The claims that should be dismissed, and those that should be retained, are as follows:

1.   <u>In connection with the incident of December 16, 2005</u>:   Dismiss all claims without prejudice.

2.   <u>In connection with the incident of April 4, 2006</u>:   Dismiss without prejudice Mayfield's claim that Defendants followed him, solely as a means of harassment, while Mayfield was driving lawfully in his vehicle.   Retain the claims that Defendants conducted surveillance on Mayfield without justification, and that they employed excessive force in Tasering him.

3.   <u>In connection with the incident of April 7, 2006</u>:   Retain all claims.

4.   <u>In connection with the incident of April 16, 2006</u>:   Retain all claims.

5. <u>In connection with the incident of July 6-7, 2006</u>:  Dismiss all claims without prejudice.

6. <u>In connection with the incident of September 26, 2006</u>:  Dismiss without prejudice Mayfield's claims that Defendants planted drug evidence in order to bring false charges of trafficking and tampering with evidence.   Retain the claim that Defendants conducted unreasonable searches of Mayfield's person.


_Lorenzo P. Garcia_
Lorenzo P. Garcia
Chief United States Magistrate Judge